City Nat. Bank of Paducah, et al. v. O. T. Gardner, et. al

[Abstract Kentucky Law Reporter, Vol. 5—682, 689.]

**Defrauding Creditors.**

Where it is shown that a business man owning real estate and many thousands of dollars worth of notes, who has creditors, conveys nearly all of his estate to his son, who fails to explain where he acquired the cash to buy such property, the transfer of such estate will be set aside at the petition of the creditors.

**Construction of Contracts.**

A contract between a father and son wherein the son comes into nearly the entire estate of the father will be closely scrutinized by the courts and will be set aside in the interest of creditors, when not clearly shown to have been fair and honest.

**Jurisdiction of Court of Appeals.**

Where the trial court does not by an order or judgment dispose of the proceeds of a sale and fix the priorities of those claiming rights therein, this court has no jurisdiction on motion for rehearing to pass upon the questions raised concerning such proceeds.

APPEALS FROM McCRACKEN COURT OF COMMON PLEAS.

February 5, 1884.

Opinion by Judge Lewis:

The first question presented in this case is simply one of fact. It is alleged in the petition that O. T. Gardner had disposed of his property with the intent to hinder and delay creditors. The bulk of his estate, consisting of cash, notes and land, was conveyed and transferred to his son and the claims of creditors left unsatisfied. While Joseph Gardner may insist that he was the victim of those he had the right to trust when forming the partnership of Corbett, Peterson & Co., this fact did not authorize him to place his estate beyond the reach of those who had the right in law and equity to have their debts paid out of it. He was a man of business capacity and of considerable estate, and that he should dispose of it all which was of any value, to his son upon a bona-fide moneyed consideration and then fail to account in any manner for the proceeds is not consistent with fair dealing or in accord with the history of his former business life, and not only so, but that

his son should invest the money, as much as $7,000, for the notes transferred to him and some $3,000 or $4,000 for the land, without being able to inform the chancellor satisfactorily at least as to how he acquired the money, are facts and circumstances so conclusive as to force the chancellor to subject the notes at least to the payment of appellant's demands.

The son, although a man of more than ordinary intelligence, has made no such explanation as removes from the chancellor's mind the idea impressed upon it by the statement of the father—that these notes were transferred to the son to avoid paying debts that the father supposed he was not bound for in law or morals. Comparing the sums of money realized from the products of the son's farm and his trading adventures with the extent and amount of the moneyed transaction, he had with his father, it is difficult if not impossible to conclude that the son had the means and the father was insolvent. The payment for the small tracts of land that are sought to be made subject to appellant's claim by this appeal would consume the surplus means derived from the farming and trading operations, and while the son may be allowed to hold this land it is evident that the transfer of the notes involved in this controversy was without consideration. Such transactions between the father and son must be looked upon with suspicion when after or on the eve of the insolvency of the father his entire estate or the greater part of it is found in the son's name. It requires proof of the most satisfactory character as to the fairness of the transactions between them, and on this point it is far from convincing.

Why the chancellor below failed to subject these notes originated no doubt from the fact that the transfer of the notes bears date a few weeks before Jasper Gardner became a member of the firm for whose debts he has been made liable. What caused the appellant on the eve of such a transaction to transfer all these notes to his son is not explained nor susceptible of any reasonable explanation from the facts of this record. . The destruction of the writing evidencing the partnership and the liability of appellee, Joseph Gardner, and the substitution of another agreement dated back so as to evidence a different agreement, would indicate the same state of case with reference to the notes. But whether so or not, after the pecuniary troubles with these several firms began, the

appellee, Joseph Gardner, stated to Thompson upon inquiry made as to the transfer of his property to his son that he, Joseph Gardner, was worth $25,000, and made an exhibit to him of his real estate notes amounting to $12,000 or $15,000. He said they were given for land in Graves, Triggs and Caldwell counties, and when these suits were brought his entire estate was gone and the land notes were in the possession of and claimed by the son as his property. All the facts indicate a wrongful purpose on the part of the appellees, and whatever may be their equities as against Corbett & Peterson the claims of creditors can not be ignored. The liability of Joseph Gardner can not now be questioned, as common-law judgments have been rendered fixing the liability, and these judgments stand unreversed. The notes should therefore have been subjected unless the counterclaim or set-off offered to be pleaded defeats the recovery.

It is alleged by the appellee, Gardner, that certain bonds and stocks had been disposed of and converted to the use of the bank, that although pledged by Peterson they were firm assets and should have been applied to the discharge of the bills and notes held by the appellant and to secure which they had been pledged. The facts are well pleaded and constitute a defense, if true, and the demurrer to the counterclaim or set-off should have been overruled. This defense was not made to the action at law, but withdrawn. A judgment at law does not affect the rights to recover on a counterclaim or set-off unless pleaded. Civ. Code, 1876, § 17. If the bank sold and converted these bonds and stocks it affords a defense by way of set-off to the action.

On Paxton's appeal, it appears that no lien was created by the service on the garnishee in either action, but in answer to the summons the garnishee responded, and this bringing them before the court the lien attached. This court in *Menderson v. Specker,* 79 Ky. 509, 3 Ky. L. 421, held that Civ. Code 1876, § 203, subsec. 3, should be literally complied with, and that a statement of the debt or demand garnisheed should be indorsed on the summons or notice so as to create a proper service. Neither summons on the garnishee in the Paxton or bank case contained such an indorsement as created a lien, and therefore, so far as there was a summons served in the Paxton case on the garnishee, Paxton must be held entitled to his pro rata portion of what the debtor owed.

At to those who were not brought before the court by Paxton the case is different, but if the demands owing by those not served as garnishees by Paxton will satisfy the bank debt, Paxton is entitled to all, or a sufficiency of the amounts owing by the debtor, garnisheed by him as will pay his debt. A garnishee answering before even service upon him would be held to account and his appearance would give a lien over others who are behind in point of time.

This is not a case for marshalling assets, as the bank has by its attachment, and the answer of the garnishees obtained a lien on the individual estate of the partner that the individual creditors can not deprive him of. The judgment in Paxton's case is *reversed* at the cost of the bank, *reversed* on the cross-appeal of Gardner as to the set-off only, and *reversed* on the original appeal of the bank. The notes claimed to be held by John Gardner will be subjected to the extent that a recovery is not defeated by the set-off to which a demurrer was sustained. As to the several tracts of land we are not disposed to disturb the judgment. The cause is remanded for proceedings consistent with this opinion.

*Bigger & Reid, Gilbert & Reid, for appellants.*

*W. G. Bullitt, Sam Houston, for appellees.*

[Cited, *Cincinnati Job Warehouse Co. v. Matthews,* 24 Ky. L. 2445, 74 S. W. 242.]

## PETITION FOR REHEARING.

### April 17, 1884.

RESPONSE BY JUDGE PRYOR:

We do not understand the bank as claiming the proceeds of the sum due by the garnishees, Roberts, Roach, Stark, Morgan, Stone, Cochran, Vaughn, etc., or that the court below has disposed of the question of priority. As to the two small tracts of land in Trigg county they were not attached by the bank, nor did the court below dispose of the proceeds. As to these two parcels of land and the notes that were not attached or garnisheed by the bank this court can not pass upon the questions raised by a petition for a rehearing, as there is no judgment distributing the proceeds or even any appeals from the orders made in the case.

As to the distribution of the assets, firm and individual, the bank attaching the property or garnisheeing the debts obtained priority, if not by the summons by the voluntary appearance of the parties and answering garnishees. We mean to include only those who did answer in response to a defective summons prior to the consolidation of the several actions.

The land in Graves county was levied on by the bank in October, 1869, and by Paxton in August, 1880, and this gave the priority to the bank as to the proceeds. As to Pool, he was summoned by the bank as a garnishee and answered in the bank case before the causes were consolidated and before he answered in the case of Paxton. Branson, Hicks, Warner, Smith, Mann, Turner, Williams, Jones, Phillips and Shrowder were summoned by the bank and answered, disclosing the amount of their indebtedness. It is only as to the garnishee answering in the bank suit before the cases were consolidated that the bank has the preference.

The petition of Paxton and Clark is overruled, also the petition of J. D. Gardner, this court being satisfied that as to the latter he has at least obtained all that he is entitled to. The opinion is modified to the extent indicated, showing what lien the bank has as to the liens of Paxton and Clark on the notes not garnisheed by the bank and the two tracts of land, while they exist. As appears from the record the proceeds have not been disposed of or their liens disturbed by the court below.

*Bigger & Reid, Gilbert & Reid*, for appellants.
*W. G. Bullitt, Sam Houston*, for appellees.